**CHASAN & WALTON, LLC**
ANDREW M. CHASAN, ISB #2100
E-mail: andrew.chasan@chasanwalton.com
TIMOTHY C. WALTON, ISB #2170
E-mail: timwalton2000@hotmail.com
P.O. Box 1069
Boise, Idaho 83701
Phone: 208-345-3760
Fax: 208-345-0288

**DUMAS LAW GROUP, LLC**
GILION C. DUMAS, ISB #8176
E-mail: gilion@dumaslawgroup.com
Ashley L. Vaughn, admitted *pro hac vice*
E-mail: ashley@dumaslawgroup.com
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Phone: 503-616-5007
Fax: 888-396-3226

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOHN DOE XX, JOHN DOE XXI, JOHN DOE XXII, JOHN DOE XXIII, JOHN DOE XXIV, JOHN DOE XXV, JOHN DOE XXVI, SHANE JULIAN, and RILEY GILROY,<br><br>Plaintiffs,<br><br>v.<br><br>BOY SCOUTS OF AMERICA, a congressionally chartered corporation authorized to do business in Idaho; CORPORATION OF THE PRESIDING BISHOP OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a foreign corporation sole registered to do business in Idaho; and CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS AND SUCCESSORS, a foreign corporation registered to do business in Idaho,<br><br>Defendants. | Case No. 1:17-cv-00184-BLW<br><br>**SECOND AMENDED COMPLAINT**<br>*Fraud and Constructive Fraud*<br><br>**Jury trial demanded** |

**SECOND AMENDED COMPLAINT - 1**

Plaintiffs allege:

## IDENTITY OF THE PARTIES

1.

Plaintiffs John Does XX-XXVI's true names are not stated in this Complaint in order to protect them from further emotional harm because this Complaint makes allegations involving child sexual abuse.  Their true names will be provided to the Court as may be required by law.

2.

Plaintiff John Doe XX is an adult who, at all times relevant to this Complaint, was subjected to child sexual abuse and other physical and emotional harm as a direct and proximate result of Defendant Boy Scouts of America's ("Defendant BSA's") wrongful conduct.  At all times relevant to this Complaint, Plaintiff John Doe XX was a resident of Idaho.  Plaintiff John Doe XX is now a resident of Hawaii.

3.

Plaintiff John Doe XXI is an adult who, at all times relevant to this Complaint, was subjected to child sexual abuse and other physical and emotional harm as a direct and proximate result of each Defendant's wrongful conduct.  At all times relevant to this Complaint, Plaintiff John Doe XXI was a resident of Idaho.  Plaintiff John Doe XXI is now a resident of Idaho.

4.

Plaintiff John Doe XXII is an adult who, at all times relevant to this Complaint, was subjected to child sexual abuse and other physical and emotional harm as a direct and proximate result of each Defendant's wrongful conduct.  At all times relevant to this Complaint, Plaintiff John Doe XXII was a resident of Idaho.  Plaintiff John Doe XXII is now a resident of Idaho.

/ / /

**SECOND AMENDED COMPLAINT - 2**

5.

Plaintiff Shane Julian is an adult who, at all times relevant to this Complaint, was subjected to child sexual abuse and other physical and emotional harm as a direct and proximate result of each Defendant's wrongful conduct.  At all times relevant to this Complaint, Plaintiff Shane Julian was a resident of Idaho.  Plaintiff John Shane Julian is now a resident of Idaho.

6.

Plaintiff Riley Gilroy is an adult who, at all times relevant to this Complaint, was subjected to child sexual abuse and other physical and emotional harm as a direct and proximate result of each Defendant's wrongful conduct.  At all times relevant to this Complaint, Plaintiff Riley Gilroy was a resident of Idaho.  Plaintiff Riley Gilroy is now a resident of Massachusetts.

7.

Plaintiff John Doe XXIII is an adult who, at all times relevant to this Complaint, was subjected to child sexual abuse and other physical and emotional harm as a direct and proximate result of Defendant BSA's wrongful conduct.  At all times relevant to this Complaint, Plaintiff John Doe XXIII was a resident of Idaho.  Plaintiff John Doe XXIII is now a resident of Virginia.

8.

Plaintiff John Doe XXIV is an adult who, at all times relevant to this Complaint, was subjected to child sexual abuse and other physical and emotional harm as a direct and proximate result of Defendant BSA'S wrongful conduct.  At all times relevant to this Complaint, Plaintiff John Doe XXIV was a resident of Idaho.  Plaintiff John Doe XXIV is now a resident of Washington.

/ / /

/ / /

/ / /

**SECOND AMENDED COMPLAINT - 3**

9.

Plaintiff John Doe XXV is an adult who, at all times relevant to this Complaint, was subjected to child sexual abuse and other physical and emotional harm as a direct and proximate result of each Defendant's wrongful conduct. At all times relevant to this Complaint, Plaintiff John Doe XXV was a resident of Idaho. Plaintiff John Doe XXV is now a resident of Idaho.

10.

Plaintiff John Doe XXVI is an adult who, at all times relevant to this Complaint, was subjected to child sexual abuse and other physical and emotional harm as a direct and proximate result of Defendant BSA's wrongful conduct. At all times relevant to this Complaint, Plaintiff John Doe XXVI was a resident of Idaho. Plaintiff John Doe XXVI is now a resident of Idaho.

11.

At all times relevant to this Complaint, Defendant BSA was a congressionally chartered foreign corporation incorporated and with its principal place of business in Texas, and operating in Idaho. At all times relevant to this Complaint, Defendant BSA operated various outdoor, citizenship, service, and character building training programs ("Scouting") for boys in Idaho, including Plaintiffs in this case.

12.

At all times relevant to this Complaint, Defendant Corporation of the Presiding Bishop of the Church of Jesus Christ Of Latter-Day Saints was a foreign religious corporation sole of the Church of Jesus Christ of Latter-Day Saints ("LDS Church") incorporated and with its principal place of business in Utah, and operating in Idaho.

13.

At all times relevant to this Complaint, Defendant Corporation of the President of the Church of Jesus Christ of Latter-Day Saints and Successors was a foreign religious corporation

of the LDS Church incorporated and with its principal place of business in Utah, and operating

in Idaho.  The Defendant Corporation of the Presiding Bishop and Defendant Corporation of the

President will be referred to collectively throughout this Complaint as "LDS Defendants."

Defendant BSA and LDS Defendants will be referred to collectively throughout this Complaint as

"Defendants."

14.

At all times relevant to this Complaint, Scouting was an integral part of the LDS

Defendants' program for raising, teaching, and guiding boys and men within the LDS Church.

Scouting was the official program for boys in the LDS Church, and many boys growing up in

the LDS Church were required or strongly encouraged to join Scouting.  On information and

belief, Scouting was an official part of the Aaronic Priesthood for young men under 21 in the

LDS Church.  Men within the LDS Church were also either required or strongly encouraged to

be Scout leaders as part of their religious growth and experience in the LDS Church.  Wards

were the basic ecclesiastical unit of the LDS Church, and each ward was presided over by a

Bishop.  The Bishop had many tasks including, on information and belief, selecting and

supervising Scout leaders within the LDS Church.  On information and belief, every ward was

supposed to maintain a Scout troop.

15.

At all material times to this Complaint, BSA was a vertically-integrated organization.  The

national BSA organization was at the top of the structure.  BSA national established goals,

standards, and rules for leaders at the lower levels to follow, and BSA national relied upon local

employees and volunteers to implement its goals, standards, and rules.  The lower levels of BSA

included sponsoring organizations, local councils, troop committees, and troops.  Many troops

were "sponsored" by the LDS Defendants through individual wards in the LDS Church.

**SECOND AMENDED COMPLAINT - 5**

Defendant BSA and LDS Defendants jointly agreed to control and operate Cub Scout and Boy Scout packs, dens, and troops ("troops"), such as those troops Plaintiffs John Does XXI, XXII, XXV, Shane Julian, and Riley Gilroy were members of, in Idaho.  Defendant BSA selected, approved, and/or retained adult volunteers to lead Scout troops, in positions such as Assistant Scoutmasters or Scoutmasters ("Scout leaders").  In troops sponsored by LDS Defendants, Defendant BSA and the LDS Defendants jointly selected, approved, and/or retained adult volunteers to act as Scout leaders.  Defendant BSA possessed the right of final approval of adult volunteers as Scout leaders, including adult volunteers that were also members of the LDS Church.  In the course of operating Scout troops, Defendant BSA also had the right to control the physical details of Scout leaders' performance of their duties on behalf of Defendant BSA.  In troops sponsored by both Defendants, both Defendants had the right to control the physical details of Scouts leaders' performance of their duties.   In performing these duties for Defendant, Scout leaders were acting in the time and space limits of their agency with Defendants, were motivated at least in part by a desire to serve Defendants, and these actions were of a type that they were required to do on behalf of the Defendants.

## AMOUNT IN CONTROVERSY

### 16.

The amount in controversy exceeds $75,000 for each Plaintiff, with the exact amounts to be determined by a jury at trial.

## ALLEGATIONS SPECIFIC TO JOHN DOE XX

### 17.

Plaintiff John Doe XX realleges and incorporates by reference paragraphs 1-16.

### 18.

John Doe XX was born in 1959.

**SECOND AMENDED COMPLAINT - 6**

19.

At all times relevant to this Complaint, John Doe XX was a child involved in Scouting, in Scout Troop 156.  John Doe XX was under the care, custody, protection, and/or responsibility of Defendant BSA during the time he was involved in Scouting.

20.

When John Doe XX was approximately 12 or 13 years old, in or around 1971 or 1972, his Scoutmaster Lawrence Libey ("Libey") began sexually abusing him. Libey's sexual abuse of John Doe XX included fondling, oral sex, sodomy, and other acts of physical, sexual, and emotional abuse. The abuse occurred at Libey's residence when John Doe XX was there to work on merit badges and other Scouting activities, and on Scout camping trips.  The abuse occurred dozens of times and lasted approximately two years.

21.

As a Scout leader for Troop 156, Libey abused at least two other Scouts, in addition to John Does XXIII and XXIV, during a similar time period.

**ALLEGATIONS SPECIFIC TO JOHN DOE XXI**

22.

Plaintiff John Doe XXI realleges and incorporates by reference paragraphs 1-21.

23.

John Doe XXI was born in 1963.

24.

At all times relevant to this Complaint, John Doe XXI was a child involved in Scouting, in Scout Troop 20, by the LDS Defendants Boise Fifth Ward.  John Doe XXI was under the care,

custody, protection, and/or responsibility of each Defendant during the time he was involved in Scouting.

25.

One of leaders of Scout Troop 20 was Doug Bowen.  In or around approximately 1974 or 1975, Bowen sexually abused John Doe XXI during a Scout camping event, by kissing and fondling him, engaging in masturbation, and engaging in other acts of sexual and emotional abuse.

26.

As a Scout leader for Troop 20, Bowen abused at least two other Scouts, in addition to John Doe XXII, and attempted to abuse at least one other Scout, in the troop.

**ALLEGATIONS SPECIFIC TO JOHN DOE XXII**

27.

Plaintiff John Doe XXII realleges and incorporates by reference paragraphs 1-26.

28.

John Doe XXII was born in 1963.

29.

At all times relevant to this Complaint, John Doe XXII was a child involved in Scouting, in Scout Troop 20, by the LDS Defendants Boise Fifth Ward.  John Doe XXII was under the care, custody, protection, and/or responsibility of each Defendant during the time he was involved in Scouting.

30.

One of leaders of Scout Troop 20 was Doug Bowen.  In or around approximately 1974 or 1975, Bowen sexually abused John Doe XXII during a Scout camping event, by kissing and fondling him multiple times, and engaging in other acts of sexual and emotional abuse.

/ / /

**SECOND AMENDED COMPLAINT - 8**

31.

As a Scout leader for Troop 20, Bowen abused at least two other Scouts, in addition to John Doe XXI, and attempted to abuse at least one other Scout, in the troop.

**ALLEGATIONS SPECIFIC TO PLAINTIFF SHANE JULIAN**

32.

Plaintiff Shane Julian ("Julian") realleges and incorporates by reference paragraphs 1-31.

33.

Julian was born in 1973.

34.

At all times relevant to this Complaint, Julian was a child involved in Cub Scouting, in a den that, on information and belief, was sponsored or operated by the LDS Defendants Caldwell Fourth Ward.  Julian was under the care, custody, protection, and/or responsibility of each Defendant during the time he was involved in Scouting.

35.

One of leaders of Julian's den was James Schmidt.  In or around approximately 1982, Schmidt sexually abused Julian at Schmidt's home by engaging in oral sex.  Schmidt's sexual abuse of Julian also included other acts of physical, sexual, and emotional abuse.

36.

As a Scout leader for the Caldwell Fourth Ward, Schmidt abused at least two other Scouts, including Plaintiff Riley Gilroy, during a similar time period.

**ALLEGATIONS SPECIFIC TO PLAINTIFF RILEY GILROY**

37.

Plaintiff Riley Gilroy ("Gilroy") realleges and incorporates by reference paragraphs 1-36.

/ / /

**SECOND AMENDED COMPLAINT - 9**

38.

Gilroy was born in 1972.

39.

At all times relevant to this Complaint, Gilroy was a child involved in Cub Scouting, in a den that, on information and belief, was sponsored or operated by the LDS Defendants Caldwell Fourth Ward.  Gilroy was under the care, custody, protection, and/or responsibility of each Defendant during the time he was involved in Scouting.

40.

One of leaders of Gilroy's den was James Schmidt.  In or around approximately 1982-1983, Schmidt sexually abused Gilroy on many Scout camping trips, by fondling him while Gilroy slept in Schmidt's tent.  Schmidt's sexual abuse of Gilroy also included other acts of physical, sexual, and emotional abuse.  Gilroy also witnessed Schmidt sexually abuse other Scouts on the same camping trips.

41.

As a Scout leader for the Caldwell Fourth Ward, Schmidt abused at least two other Scouts, including Plaintiff Shane Julian, during a similar time period.

**ALLEGATIONS SPECIFIC TO PLAINTIFF JOHN DOE XXIII**

42.

Plaintiff John Doe XXIII realleges and incorporates by reference paragraphs 1-41.

43.

John Doe XXIII was born in 1956.

/ / /

/ / /

/ / /

**SECOND AMENDED COMPLAINT - 10**

44.

At all times relevant to this Complaint, John Doe XXIII was a child involved in Scouting, in Scout Troop 156.  John Doe XXIII was under the care, custody, protection, and/or responsibility of Defendant BSA during the time he was involved in Scouting.

45.

When John Doe XXIII was between approximately 14 and 16 years old, in or around 1970 to 1972, his Scoutmaster Libey sexually abused him.  Libey's sexual abuse of John Doe XX included fondling, oral sex, and other acts of physical, sexual, and emotional abuse.  The abuse occurred at Libey's residence.

**ALLEGATIONS SPECIFIC TO PLAINTIFF JOHN DOE XXIV**

46.

Plaintiff John Doe XXIV realleges and incorporates by reference paragraphs 1-45.

47.

John Doe XXIV was born in 1960.

48.

At all times relevant to this Complaint, John Doe XXIV was a child involved in Scouting, in Scout Troop 156.  John Doe XXIV was under the care, custody, protection, and/or responsibility of Defendant BSA during the time he was involved in Scouting.

49.

When John Doe XXIV was between approximately 11 and 12 years old, in or around 1971 to 1972, his Scoutmaster Libey sexually abused him.  Libey's sexual abuse of John Doe XX included fondling, anal sex, and other acts of physical, sexual, and emotional abuse.  The abuse occurred at Libey's residence.

/ / /

**SECOND AMENDED COMPLAINT - 11**

**ALLEGATIONS SPECIFIC TO PLAINTIFF JOHN DOE XXV**

50.

Plaintiff John Doe XXV realleges and incorporates by reference paragraphs 1-49.

51.

John Doe XXV was born in 1967.

52.

At all times relevant to this Complaint, John Doe XXV was a child involved in Scouting, in Scout Troop 139, which was sponsored or operated by the LDS Defendants Nampa Third Ward.  John Doe XXV was under the care, custody, protection, and/or responsibility of each Defendant during the time he was involved in Scouting.

53.

When John Doe XXV was between approximately 13 years old, in or around 1980, his Scoutmaster Schmidt sexually abused him.  Schmidt's sexual abuse of John Doe XXV included fondling, oral sex, and other acts of physical, sexual, and emotional abuse.  The abuse occurred at Schmidt's residence and on an overnight Scouting camping trip.

**ALLEGATIONS SPECIFIC TO PLAINTIFF JOHN DOE XXVI**

54.

Plaintiff John Doe XXVI realleges and incorporates by reference paragraphs 1-53.

55.

John Doe XXVI was born in 1969.

56.

At all times relevant to this Complaint, John Doe XXVI was a child involved in Scouting, in Scout Troop 228, which was sponsored or operated by the Caldwell United Methodist Church.

John Doe XXVI was under the care, custody, protection, and/or responsibility of Defendant BSA during the time he was involved in Scouting.

57.

When John Doe XXVI was between approximately 11 years old, in or around 1981, his Scoutmaster Schmidt sexually abused him.  Schmidt's sexual abuse of John Doe XXVI included fondling, oral sex, group sex, and other acts of physical, sexual, and emotional abuse.  The abuse occurred at Schmidt's residence and on an overnight Scouting camping trip.

**DEFENDANTS' KNOWLEDGE OF SEXUAL ABUSE IN SCOUTING**

58.

Plaintiffs reallege and incorporate by reference paragraphs 1-57.

59.

Beginning as early as the 1910s, Defendant BSA regularly received reports and information from its local Councils and agents, of adult Scouting volunteers and professional Scouters sexually abusing Scouts.  Based on these reports, Defendant BSA created a file system then known as the "Red Flag" files — now the "Ineligible Volunteer" files ("IV files") — to attempt to track a variety of transgressions by adult volunteers, including volunteers that sexually abused Scouts.  Defendant BSA categorizes IV files according to the type of transgression committed, labeling IV files that contain allegations of child sexual abuse as "Perversion" files.  By 1972, approximately the year John Doe XX was sexually abused by his Scout leader, Defendant BSA had created thousands of Perversion IV files.  The number of IV Perversion files that still exists significantly underrepresents the actual number of IV Perversion files and of adult Scout leaders that molested Scouts for many reasons, including that Defendant BSA destroyed most of the IV files created before Plaintiffs were abused, and because most children did not report their sexual abuse.

**SECOND AMENDED COMPLAINT - 13**

60.

In addition to knowing about the decades of sexual abuse of Scouts by Scout leaders prior to Plaintiffs' abuse, Defendant BSA had specific notice by 1974 that, in Idaho alone, there were at least four Scout leaders who had been accused of sexually abusing Scouts or other youth prior to 1974.  Additional Scout leaders abused additional Scouts prior to 1974, though it is unclear at this time whether Defendant BSA received notice prior to 1974 of the additional abuse allegations.  All of these Scout leaders operated in various local councils operated by Defendant BSA in Idaho.

61.

Prior to Plaintiffs' abuse, LDS Defendants had specific notice by 1974 that, in Idaho, at least two LDS Scout leaders in LDS-sponsored troops had been accused of sexually abusing Scouts prior to 1974.

62.

Prior to Libey abusing John Does XX, XXIII, AND XXIV, Defendant BSA knew Libey was sexually attracted to boys, was dangerous, and was ineligible to be an adult Scout volunteer. Libey served as the Assistant Scoutmaster for Troop 156, sponsored by the Lewiston Elks Lodge, in around 1968 or 1969.  Within a month after Libey became the Assistant Scoutmaster, the troop went on a Scout camping trip.  Libey had a minor Scout sleep in his tent with him, alone.  The Scoutmaster of Troop 156 at the time did not approve and confronted Libey.  The Scoutmaster then reported the incident to the Elks Lodge board.  The board chose Libey to lead the troop instead of the Scoutmaster who had reported his concerns.  Shortly thereafter, Libey became the sole Scoutmaster of Troop 156.  As Scoutmaster of Troop 156, Libey repeatedly and severely sexually abused Plaintiff John Doe XX, sexually abused Plaintiff John Does XXIII and

**SECOND AMENDED COMPLAINT - 14**

XXIV between approximately 1970 and 1972, another Scout between approximately 1968 and 1969, and another Scout between approximately 1972 and 1975.

63.

Both Defendant BSA and LDS Defendants were advised by no later than 1964 that Larren Arnold was a Scout leader sexually abusing boys in Scouting in Idaho.

64.

Prior to Schmidt abusing Plaintiffs Julian, Gilroy, John Doe XXV, and John Doe XXVI, and no later than 1974, both Defendant BSA and LDS Defendants knew Schmidt was sexually attracted to boys, was dangerous, and was ineligible to be an adult Scout volunteer.

Prior to 1974, a LDS Church member reported to the Stake President of the Nampa Idaho, West Stake at the time, that he had heard reports that Schmidt was acting sexually inappropriately with Scouts at Scout camps.

During the spring and summer of 1977, Schmidt sexually abused at least six Scouts during Scout camping trips at Camp Morrison and/or Camp Tapawingo and other locations.

In June 1979, as documented in the Ineligible Volunteer File that BSA created on Schmidt, two of the Scouts who Schmidt abused during summer 1977, and the mother of one of the Scouts, reported Schmidt's 1977 abuse to the Scout Executive of the Ore-Ida Council, Rex Black.  Scout Executive Black reported these incidents to the national office of BSA.  In the spring or summer of 1979, Schmidt also abused a Scout who was a member of a Scout troop sponsored by the LDS Defendants Nampa Ninth Ward, for which Schmidt was an Assistant Scoutmaster or Scoutmaster.  In July 1979, Scout Executive Black asked Schmidt to stop volunteering at Scout camps, but did not completely bar Schmidt from volunteering or participating in Scouting.

**SECOND AMENDED COMPLAINT - 15**

In approximately the late summer or early fall of 1979, several parents of children involved in Scouting in the Nampa Third and Ninth Wards met and discussed Schmidt's abuse of their children.  Parents reported the abuse to the Bishop of the Nampa Ninth Ward and to the Stake President of the Nampa, Idaho West Stake.  The Bishop of the Nampa Third Ward also heard reports that Schmidt was sexually abusing Scouts and reported these allegations to the Stake President.  The Stake President asked Schmidt to cease Scouting activities in the wards and in the state.

In or around 1980, Schmidt sexually abused Plaintiff John Doe XXV.

Later in 1981, the Stake President received a report that Schmidt had sexually abused a child in a troop not sponsored by the LDS Defendants, and he notified Scout Executive Black.  Scout Executive Black notified the BSA national office and reported that Schmidt was still an active Scout volunteer in the district.

In 1982, Scout Executive Black advised BSA national that he did not believe Schmidt should be removed from scouting.  BSA national took no steps to ensure that Schmidt was removed.

In 1982, Schmidt went on to volunteer with Troop 228, sponsored by the Caldwell Methodist Church, where he repeatedly abused one Scout and his cousin.  Also beginning in 1982, Schmidt sexually abused Plaintiffs Julian and Gilroy, and at least one other Scout, participating in dens and troops sponsored by the LDS Defendants Caldwell Fourth Ward.  Schmidt was also registered as a Scoutmaster for the LDS Defendants Caldwell Fifth Ward and with other Scout troops in the area.

In 1983, Schmidt was arrested for lewd conduct on a camping trip with a Scout from Troop 228.

**SECOND AMENDED COMPLAINT - 16**

Defendant BSA finally placed Schmidt in the Ineligible Volunteer files and prohibited from participating in Scouting, on March 17, 1983, after he had abused at least over a dozen Scouts.

65.

Based on the IV Files, by the time Plaintiffs joined Scouting, Defendant BSA knew that Scouting posed a danger to minor boys because there had been a longstanding, consistent, and widespread problem with adult Scout volunteers sexually abusing Scouts.

66.

Prior to and during Plaintiffs' abuse, on information and belief, LDS Defendants also knew that Scouting posed a danger to minor boys and knew of the risk that Scouts could be sexually abused by Scout leaders, including by LDS Church Scout leaders and in troops sponsored by LDS Defendants.

67.

Prior to Plaintiffs' abuse, Defendants knew that at least some significant number of Scouts such as Plaintiffs would be sexually abused by Scout leaders each and every year if Scouting remained structured as it was.  Defendants knew that child sexual abusers were using Scouting to gain access to and gain the trust of Scouts, including Plaintiffs, in order to abuse them.

**DEFENDANTS' FRAUD**

68.

Plaintiffs reallege and incorporate by reference paragraphs 1-67.

69.

Defendants invited boys, including Plaintiff, to participate in Scouting and enter into a commercial relationship, which included Scouts paying an annual membership fee and other fees, and making required purchases, in exchange for participating in Scouting.  Defendants also

**SECOND AMENDED COMPLAINT - 17**

created a relationship of trust and confidence with Plaintiffs by inviting them to participate in Scouting and acting *in loco parentis* to Plaintiffs during Scouting activities such as camping and hiking trips. Defendants also undertook responsibility for the safety of Scouts such as Plaintiffs and delegated that responsibility to Scout volunteers acting under Defendants' control.

70.

Prior to and during Plaintiffs' abuse, Defendants actively concealed their knowledge that abusers had been joining Scouting for decades to gain access to and sexually abuse boys, such as Plaintiffs. When Defendant BSA added a volunteer to the IV File list for sexually abusing boys, Defendant BSA routinely instructed the Scout Executives and other local employees and volunteers to keep secret the reason the volunteer had been dismissed and the existence of the IV Perversion file system. Many times, Defendant BSA then deleted, or instructed local employees or volunteers to delete, the volunteer's name from unit applications and rosters. Defendant BSA also had a policy of limiting the use of the IV File system to a limited number of employees at the BSA national office and certain local employees and volunteers. Defendant BSA had no policies requiring or encouraging its employees to disclose the existence or functioning of the IV File system to the Scouting community and the general public, thereby limiting the use of the IV File system to report allegations of wrongdoing by adult Scout volunteers.

71.

Defendants also actively concealed their knowledge that Libey and other Scout leaders in Idaho, such as Arnold and Schmidt, had been accused of sexually abusing Scouts prior to Plaintiffs' abuse.

72.

Prior to and during Plaintiffs' abuse, Defendants engaged in a decades-long public relations campaign to represent to the government, the public, and the Scouting community,

**SECOND AMENDED COMPLAINT - 18**

including Plaintiffs and their families, that Scouting was a safe and morally upright program that was physically, emotionally, and spiritually beneficial for boys.  Defendants additionally represented that the adult Scout leaders, who were their agents, were appropriate and trustworthy mentors and leaders for young boys.

73.

Prior to and during Plaintiffs' abuse, Defendants conveyed the misrepresentation that adult Scout leaders were appropriate and trustworthy mentors and leaders by selecting, approving, and retaining certain men as adult Scout volunteers.  Defendants further conveyed the misrepresentation that Scouting was a safe and morally upright program for boys by failing to enact or enforce common sense child abuse policies, acknowledge the existence of child sexual abuse in Scouting, or otherwise amend the Scouting program to reduce the prevalence of child sexual abuse in Scouting.

74.

Prior to and during Plaintiffs' abuse, Defendant BSA also conveyed the aforementioned misrepresentations through explicit language, such as in newspaper, magazine, radio, and television advertisements; news articles and other media spots; BSA-published publications; and annual reports to Congress.  As examples, Defendant BSA made specific statements in various editions of the *Boy Scout Handbook* — the handbook that every Scout, including Plaintiffs, uses as a guide to his Scouting experience.  The Scout Oath was and remains: "On my honor I will do my best to do my duty to God and my country and to obey the Scout law; To help other people at all times; To keep myself physically strong, mentally awake, and morally straight."  The Scout law then describes the characteristics a Scout should have: "[a] Scout is trustworthy, loyal, helpful, friendly, courteous, kind, obedient, cheerful, thrifty, brave, clean, and reverent."  This oath is recited by all Scouts, including adult Scout volunteers, at every troop meeting and other

Scouting events. These were ideals that both Scouts and Scout leaders were expected to follow. In the 1965–1972 *Boy Scout Handbook*, the Scoutmaster is referred to as "a wonderful man" who goes on hikes and goes camping with the Troop, and who "is the friend to whom you can always turn for advice." Defendant BSA, *Boy Scout Handbook*, at 94 (7th ed., 3rd printing, 1967). The 1972-1978 *Boy Scout Handbook*, BSA stated, "[o]ver there watching things is your Scoutmaster. He's a great guy. He gives hours of his time to you and the troop. And do you know why? Mostly because he knows Scouting is important to his city and nation. Besides, he is interested in boys." Defendant BSA, *Boy Scout Handbook*, at 9 (8th ed., 2nd printing, 1973). This edition also told Scouts: "Your Scoutmaster is interested in and wants to know about you. Only then can he help you to have fun in Scouting. . . . . [Y]our Scoutmaster wants to know you better. He wants to see what you have to bring to the troop. Soon after joining you will have your first personal growth agreement conference. Here you and your Scoutmaster will sit down for a talk. Tell him about yourself. . . . Your Scoutmaster will probably ask about the things you like to do. . . . Your Scoutmaster will also want to know what things you do well." *Id*. at 82-83. This partial list of explicit misrepresentations is not exhaustive.

75.

LDS Defendants also promoted Scouting as a wholesome, safe, and beneficial program for boys, by sanctioning Scouting as the official program for boys within the LDS Church. By selecting men within the LDS Church to serve as Scout leaders, LDS Defendants represented that those men were trustworthy and morally upright leaders and mentors. Young boys that were members of the LDS Church were required or strongly encouraged to join Scouting as part of their growth and development within the Church. For example, in 1978, the president of the LDS Church said that "This [BSA] is not an optional program...Scouting is no longer on trial. It is an economically, socially, and spiritually sound program." The LDS Church also was the first

chartering organization within BSA.  In 1928, the LDS Church named Scouting as the activity program for Deacons and teachers (boys ages 12-16 years old) in the LDS Church.  The LDS Church and BSA continue to be closely integrated organizations — for example, the LDS Church is the largest sponsor of Boy Scout troops in BSA, BSA has an entire LDS-BSA Relationships department, and many key leaders within the LDS Church serve on BSA boards and in other leadership positions in BSA.  This partial list of explicit misrepresentations is not exhaustive.

76.

Prior to and during Plaintiffs' abuse, Defendants also conveyed the aforementioned misrepresentations through silence because Defendants never made any warnings to the Scouting community, including Plaintiffs, their parents, and to the general public that adult Scout volunteers were not always safe and trustworthy, that they might make sexual advances, or that significant numbers of them had abused boys in the past.  This partial list of omissions is not exclusive.

77.

Defendants made these misrepresentations with the intent of inducing Plaintiffs (and other children similarly situated), Plaintiffs' parents (and other parents and guardians similarly situated), and the public to rely on Defendants' misrepresentations so that they would continue to trust Scouting and adult Scout volunteers, and continue to participate in Scouting.  Defendants also made the misrepresentations with the intent of shielding Scouting from scrutiny to ensure that children continued to join, to benefit Defendants' financial position and reputation.

78.

Defendants knew the representations about Scouting, Scout leaders in general, and Libey, Arnold, and Schmidt, specifically, were false, or made the misrepresentations with reckless disregard for the truth.

**SECOND AMENDED COMPLAINT - 21**

79.

Defendants' knowledge of the dangers and prevalence of child sexual abusers in Scouting and specific knowledge of the sexual abuse accusations against Libey, Arnold, and Schmidt constituted a material fact.  Had Plaintiffs and their parents been aware of such dangers, Plaintiffs would not have entered into a relationship, or would not have continued a relationship, with Defendants and Scouting, or would have taken steps to protect themselves from being abused while in Scouting.

80.

Plaintiffs and their parents justifiably and reasonably relied on Defendants' misrepresentations by allowing Plaintiffs to join Scouting, remain in Scouting, and engage in a trust relationship with their Scout leaders Libey, Bowen, and Schmidt.  Their reliance was justified because Plaintiffs and their parents could not conduct an investigation of Defendants' claims that Scout volunteers were safe and trustworthy, given that the records that would disprove the fraud — *e.g.* Defendant BSA's IV files — were not available to the public until decades later; and Plaintiffs and their parents did not know of Defendants' knowledge of their abusers.

81.

As a direct and proximate result of each Defendant's oppressive, fraudulent, malicious, and/or outrageous conduct as described above and as defined in Idaho Code § 6-1604, Plaintiffs John Does XXI, XXII, and XXV, Julian, and Gilroy were seriously injured and damaged. Plaintiffs John Does XXI, XXII, and XXV, Julian, and Gilroy's injuries prevail and will continue to prevail for an indefinite time into the future.  It is impossible at this time to fix the full nature, extent, severity, and duration of said injuries, but they are alleged to be permanent, progressive, and disabling.  Plaintiffs John Does XXI, XXII, and XXV, Julian, and Gilroy have incurred and

**SECOND AMENDED COMPLAINT - 22**

will likely continue to incur damages.  These damages include both physical and emotional

injury.  These damages include general damages and such other damages as are shown by the

evidence, to be proved at the time of trial, all to Plaintiffs John Does XXI, XXII, and XXV, Julian,

and Gilroy's general damages and such other damages as are shown by the evidence, in an amount

now unknown.  Their damages include but are not limited to emotional and physical pain and

suffering, mental anguish, and disability.

82.

     As a direct and proximate result of Defendant BSA's oppressive, fraudulent, malicious,

and/or outrageous conduct as described above and as defined in Idaho Code § 6-1604, Plaintiffs

John Does XX, XXIII, XXIV, and XXVI were seriously injured and damaged.  Plaintiffs John

Does XX, XXIII, XXIV, and XXVI's injuries prevail and will continue to prevail for an indefinite

time into the future.  It is impossible at this time to fix the full nature, extent, severity, and

duration of said injuries, but they are alleged to be permanent, progressive, and disabling.

Plaintiffs John Does XX, XXIII, XXIV, and XXVI have incurred and will likely continue to incur

damages.  These damages include both physical and emotional injury.  These damages include

general damages and such other damages as are shown by the evidence, to be proved at the time of

trial, all to Plaintiffs John Does XX, XXIII, XXIV, and XXVI's general damages and such other

damages as are shown by the evidence, in an amount now unknown.  Their damages include but are

not limited to emotional and physical pain and suffering, mental anguish, and disability.

83.

     Within the past three years Plaintiffs discovered and continue to discover that, throughout

the time they were involved in the Scouting program and until at least 2010, Defendants

perpetrated a fraud related to the dangers of Scout leaders sexually abusing children in the

Scouting program.  Prior to each Plaintiff's discovery of Defendants' fraud, each Plaintiff did not

know and could not know that Defendants' misrepresentations, or lack thereof, regarding the trustworthiness of Scout leaders and the safety of the Scouting program were false, and that Defendants knew the Scouting program was structured in such a way that sexual abuse of Scouts by Scout leaders was certain to occur to some degree within the Scouting program.

### FIRST CLAIM FOR RELIEF
***Fraud***

### COUNT I
### Plaintiffs John Does XXI, XXII, and XXV,
### Shane Julian, and Riley Gilroy against all Defendants

84.

Plaintiffs John Does XXI, XXII, and XXV, Julian, and Gilroy reallege and incorporate by reference paragraphs 1-83.

85.

As alleged in paragraphs 70, 71, and 77-80, Defendants committed fraud by active concealment.

86.

As alleged in paragraphs 72-75, and 77-80, Defendants committed fraud by conduct and through explicit language.

87.

As alleged in paragraph 69, Defendants had a duty to disclose their knowledge of the sexual abuse history in Scouting and the risk that Scouts such as Plaintiffs could be sexually abused by their Scout leaders, to Plaintiffs John Does XXI, XXII, and XXV, Julian, and Gilroy.

88.

As alleged in paragraphs 76-80, Defendants committed fraud through nondisclosure.

**SECOND AMENDED COMPLAINT - 24**

89.

As a direct result and consequence of Defendants' fraud, Plaintiffs John Does XXI, XXII, and XXV, Julian, and Gilroy suffered the injuries and incurred the damages described in paragraph 76.

### COUNT II
### Plaintiffs John Does XX, XXIII, XXIV, and XXVI against Defendant BSA

90.

Plaintiffs John Does XX, XXIII, XXIV, and XXVI reallege and incorporate by reference paragraphs 1-89.

91.

As alleged in paragraphs 70, 71, and 77-80, Defendant BSA committed fraud by active concealment.

92.

As alleged in paragraphs 72-74, and 77-80, Defendant BSA committed fraud by conduct and through explicit language.

93.

As alleged in paragraph 69, Defendant BSA had a duty to disclose its knowledge of the sexual abuse history in Scouting and the risk that Scouts such as Plaintiffs could be sexually abused by their Scout leaders, to Plaintiffs John Does XX, XXIII, XXIV, and XXVI.

94.

As alleged in paragraphs 76-80, Defendant BSA committed fraud through nondisclosure.

/ / /

/ / /

/ / /

95.

As a direct result and consequence of Defendant BSA's fraud, Plaintiffs John Does XX, XXIII, XXIV, and XXVI suffered the injuries and incurred the damages described in paragraph 82.

## SECOND CLAIM FOR RELIEF
### *Constructive Fraud*

### COUNT I
**Plaintiffs John Does XXI, XXII, and XXV,**
**Shane Julian, and Riley Gilroy against all Defendants**

96.

Plaintiffs John Does XXI, XXII, and XXV, Julian, and Gilroy reallege and incorporate by reference paragraphs 1-95.

97.

As alleged in paragraphs 69, 76, 79, and 80, Defendants committed constructive fraud.

98.

As a direct result and consequence of Defendants' constructive fraud, Plaintiffs John Does XXI, XXII, and XXV, Julian, and Gilroy suffered the injuries and incurred the damages described in paragraph 81.

### COUNT II
**Plaintiffs John Does XX, XXIII, XXIV, and XXVI Against Defendant BSA**

99.

Plaintiffs John Does XX, XXIII, XXIV, and XXVI reallege and incorporate by reference paragraphs 1-98.

100.

As alleged in paragraphs 69, 76, 79, and 80, Defendant BSA committed constructive fraud.

/ / /

**SECOND AMENDED COMPLAINT - 26**

101.

As a direct result and consequence of Defendant BSA's constructive fraud, Plaintiffs John Does XX, XXIII, XXIV, and XXVI suffered the injuries and incurred the damages described in paragraph 82.

WHEREFORE, Plaintiffs pray for judgment as follows:

1.      Non-economic damages and such other damages as are shown by the evidence by Defendant BSA for each Plaintiff separately, the exact amounts to be determined by the jury at the time of trial;

2.      Non-economic damages and such other damages as are shown by the evidence by Defendant LDS Church for each Plaintiff John Doe XXI, John Doe XXII, John Doe XXV, Shane Julian, and Riley Gilroy separately, the exact amounts to be determined by the jury at the time of trial;

3.      For Plaintiffs' disbursements and incurred costs;

4.      Attorney fees; and

5.      For any other relief this Court deems just and equitable.

**PLAINTIFFS DEMAND A TRIAL BY JURY.**

DATED this 15th day of October, 2018.

/s/ Andrew M. Chasan
Andrew M. Chasan, ISB #2100
Timothy C. Walton, ISB #2170
**CHASAN & WALTON, LLC**

Ashley L. Vaughn, admitted *pro hac vice*
Gilion C. Dumas, ISB #8176
**DUMAS LAW GROUP, LLC**

*Attorneys for Plaintiffs*

**SECOND AMENDED COMPLAINT - 27**

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of October, 2018, I caused a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which sent a Notice of Electronic Filing to the following persons:

Andrew M. Chasan, andrew.chasan@chasanwalton.com
Timothy C. Walton, timwalton2000@hotmail.com
Gilion C. Dumas, gilion@dumaslawgroup.com
Ashley L. Vaughn, ashley@dumaslawgroup.com
Stephen R. Thomas, sthomas@hawleytroxell.com
Mindy M. Muller, mmuller@hawleytroxell.com
Tyler J. Anderson, tanderson@hawleytroxell.com
Wade L. Woodard, wlw@aswblaw.com
Steven B. Andersen, sba@aswblaw.com

*/s/ Andrew M. Chasan*
Andrew M. Chasan